ROBERT W. BRYANT, APPELLANT, V. BEEBE & RUNYAN FURNITURE COMPANY, APPELLEE.

FILED JANUARY 5, 1907.   No. 14,591.

1. Negligence: PROXIMATE CAUSE OF INJURY.   To warrant a finding that a negligent act or omission, not amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury was a natural or probable consequence thereof, and that it ought to have been foreseen in the light of attending circumstances.

2. Master and Servant: INJURY: PRESUMPTIONS.   Ordinarily, in forecasting the probable consequences of his own acts or omissions, an employer may rely on the presumption that each employee will exercise due care not only to avoid injury to himself, but to his coemployees.

3. ————: DEFECTIVE APPLIANCES.   Although it may be shown that a truck furnished by an employer was defective, and that the defect therein was one of the factors which combined to produce an accident in which an employee was injured, yet if the employees were chargeable with notice that such truck was liable to be or to become defective, and voluntarily placed themselves in a position of peril with respect to it, and the injury was one that could not have occurred but for their having taken such position, the negligence of the injured party and coemployees, and not that of the employer, is the proximate cause of the injury.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*George W. Cooper,* for appellant.

*C. C. Wright* and *B. H. Dunham, contra.*

ALBERT, C.

Robert W. Bryant brought an action against Beebe & Runyan Furniture Company to recover damages for personal injuries alleged to have been sustained by the plaintiff while in the employ of the defendant as a result of the defendant's negligence. In addition to a denial of negligence on the part of the defendant, the answer alleges that the injuries were sustained by the negligence of the plaintiff himself and one of his employees. It appears from the pleadings and the evidence that at the date of the injury, and for almost three years prior thereto, the plaintiff was employed by the defendant in its warehouse in the city of Omaha, where it was engaged in selling furniture at wholesale. That a platform, about 100 feet long and 6 feet wide, extends southward from the warehouse on a line with the west side thereof. This platform is about two feet lower at the end adjoining the warehouse than at the opposite end. A railroad track parallels this platform, where goods shipped by the company are loaded on cars. The shipping room of the warehouse is on the first floor, and is connected with the platform above described by a door. Large trucks are used for the purpose of transferring goods from the warehouse to the cars. These trucks consist of a large platform, under which are four wheels. The platform balances on the axis of two of these wheels, one of which is set at each side. At each end of the platform, and half way between the sides, is a smaller wheel called the "guide wheel." The guide wheels are so adjusted that both do not touch the floor at the same time. The height of the platform, measured from its top to the surface

supporting the two side wheels, is from 10 to 12 inches. At each end of the platform two upright bars are bolted which support a handle at a convenient height for pushing or pulling the truck. The defendant kept several of these trucks about its warehouse. The evidence shows that the fastenings of the guide wheels are easily broken, and that it was quite common for a truck to be without a guide wheel at one end of the platform or the other. The plaintiff testified that on the morning of the day the injury occurred he called the attention of the defendant's foreman to the fact that a guide wheel was broken from some of the trucks, and that they were dangerous in that condition, and that thereupon the foreman ordered two of them to the repair shop, and they were taken away, and that he did not notice any other broken trucks that morning. He further testified that on the evening of that day, just at quitting time, the foreman directed him and some other employees to truck some merchandise from the warehouse to a car standing on the warehouse track, near the middle of the platform extending from the warehouse. Three of the employees, the plaintiff, Weston and Hansen, each took a truck loaded with merchandise, to carry out the order of the foreman. The plaintiff pushed his truck to the car and unloaded it, but, owing to the width of the platform, could not pass the other trucks to return to the warehouse, so he pushed his truck farther southward, and waited for his companions to unload theirs. Weston next unloaded his truck, and pushed it out of Hansen's way. Hansen then unloaded his truck, and started to pull it to the warehouse. Plaintiff followed, pushing his, and Weston followed the plaintiff, also pushing his truck. They were moving down grade to the warehouse in this order when the accident occurred, resulting in plaintiff's injury. His account of the accident, as shown by his examination on the stand, is as follows: "Q. What occurred, if anything, after you and Mr. Hansen had started to the building with your trucks? Just state to the jury what occurred. A. We was

going down the platform at a fair gait, going towards the annex door to put our trucks away. It was quitting time in the evening. Just before I got to the door, or near that time, I heard a racket behind me, and, thinking Mr. Weston's truck was loose, coming down the grade towards me, I cast my eyes across my shoulder to see, and I throwed out my right foot, aiming to catch the truck, and just at that time my truck struck ahead of me, and I fell over the handle of my truck, and I glanced forward as I fell, and I seen Mr. John Hansen jerking up with both hands on his truck, and my truck was up close against his. Q. What did your truck strike, if anything, at that time and place? A. Struck Mr. Hansen's truck, the man that was running ahead of me. Q. What occurred immediately after your truck struck Mr. Hansen's truck? A. Immediately afterwards I was struck with Mr. Weston's truck from behind. Q. Where were you struck in the person? A. On the left leg between the knee and the hip joint. Q. You may state to the jury, at the time you were struck— just immediately before you were struck—what did you see in front of you? A. I saw Mr. Hansen with a truck in front of me going toward the door. * * * Q. What was the position of Mr. Hansen's truck at the time your truck struck it? A. At the time that my truck struck Mr. Hansen's I heard the crash at the time I glanced ahead to see what was there, and I saw that I was hooked in Mr. Hansen's truck, his truck, the front end, was down and my truck was up against it. Just about that time I was struck from behind and fell, and I went over the handle of my truck. The front end of my truck was under the hind end of his." There is evidence sufficient to sustain a finding that there was no guide wheel at the front end of the truck used by Hansen the evening of the accident, and the evidence might also warrant the inference that the stopping of Hansen's truck, in the manner described in the plaintiff's evidence, was due to the absence of a guide wheel from the front, which would permit the front end to fall to the floor

and stop suddenly, on account of the bolts projecting on the underside coming in contact with the floor on which the truck was being moved. The court directed a verdict against the plaintiff, and judgment went accordingly. The plaintiff appeals.

The plaintiff's position is that his injury was the proximate result of the absence of a guide wheel on Hansen's truck, and that the omission of the defendant to provide such wheel constitutes actionable negligence. In order to warrant a finding that a negligent act or omission, not amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act or omission, and that it ought to have been foreseen in the light of attending circumstances. *City of Crete v. Childs*, 11 Neb. 252; *Wood v. Pennsylvania R. Co.*, 177 Pa. St. 306, 55 Am. St. Rep. 728; *Block v. Milwaukee Street R. Co.*, 89 Wis. 371, 46 Am. St. Rep. 849; *Davis v. Chicago, M. & St. P. R. Co.*, 93 Wis. 470, 57 Am. St. Rep. 935; *Cole v. German Savings & Loan Society*, 124 Fed. 113, 63 L. R. A. 416. As was said in *Roach v. Kelly*, 194 Pa. St. 24, 75 Am. St. Rep. 685: "A man is answerable for the consequences of a fault only so far as the same are natural or proximate, and as may on this account be foreseen by ordinary forecast, and not for those which arise from a conjunction of his fault with other circumstances of an extraordinary nature." It may be said to be elementary that, ordinarily, an employer may rely on the presumption that due care will be exercised by each employee to avoid injury to himself, and by each employee to avoid injury to his coemployees. 1 Labatt, Master and Servant, secs. 30a, 30b.

The foregoing proposition, applied to the facts in this case, are sufficient, we think, to justify the court in holding, as a matter of law, that the defendant's negligence was not the proximate cause of the injury. Assuming that Hansen's truck had no guide wheel on the front end of the platform, and that for want of such wheel the front end

dropped to the floor and caught, and that in consequence the collision occurred, .it is clear from the evidence of the plaintiff himself that it occurred almost at the very instant that Hansen's truck dropped, and, consequently, the trucks must have been moving in dangerously close proximity to each other. The plaintiff and his companions were men of mature years and of experience in working with and among these trucks. They were chargeable with knowledge that the guide wheels were liable to be broken off, and of the dangers incident to the use of a truck in that condition. With those facts before their minds, the plaintiff followed Hansen's truck, and Weston followed plaintiff's, down the incline, with so little space between the trucks, at such a rate of speed, and under such circumstances, that they must have known as reasonable men that, in case Hansen's truck from any cause should suddenly stop, the inevitable result would be a collision which would probably result in serious injury to the plaintiff at least. There was no urgent necessity for haste, nor were they acting under any command of a superior requiring them to act without reflection or due regard for their own safety or the safety of each other. They voluntarily placed themselves in a position of peril, and the plaintiff's injury was one of the natural and probable consequences, and one which they ought to have foreseen in the light of attending circumstances. In other words, the plaintiff and his companions, in moving down that incline with their trucks at such a rate of speed, and with such a distance between them that in case of accident to the foremost truck the other two would be unable to stop in time to prevent a dangerous collision, were guilty of negligence but for which the accident would not have occurred. As we have seen, the defendant had a right to presume that they would exercise due care to protect themselves and each other, from injury. Their failure to do so was not one of the circumstances which it was required to foresee as one of the probable consequences of the use of a truck without a guide wheel. It

seems clear to us, on the record presented, that it must be held that the proximate cause of the plaintiff's injury was not the alleged negligence of the defendant, but that of the plaintiff and his coemployees.

It is recommended that the judgment of the district court be affirmed.

JACKSON, C., concurs.

DUFFIE, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.